DONALDSON *v.* CRANE.

1. TRESPASS—POSSESSION—ADMISSIONS OF LANDLORD—EFFECT ON TENANT.

> The possession by a tenant of the portion of the demised premises near a disputed boundary line is not affected by a statement of his landlord to the owner of the adjoining parcel that he "would never use" such portion; and such statement will not support an action of trespass by the adjoining owner against the tenant, who continues in possession of the portion.

2. SAME—DIRECTING VERDICT.

> Where, in an action of trespass *qu. cl.*, the testimony conclusively shows that plaintiff had no actual possession, and that defendant did have such possession, and still has it, the latter is entitled to have verdict directed in his favor.

Error to Lenawee; Chester, J. Submitted May 4, 1899. Decided June 5, 1899.

Trespass *quare clausum fregit* by Edward H. Donaldson against Arthur Crane. From a judgment for plaintiff, defendant brings error. Reversed.

*Watts, Bean & Smith*, for appellant.

*Salsbury & O'Mealey*, for appellee.

HOOKER, J. David E. Blowers died in 1876 seised of a parcel of land, separate portions of which became the property of his two nephews, Edward and Norman, about the year 1878. Norman owned the south portion and Edward the north. Subsequently Edward conveyed his tract to Ferguson, who in turn deeded to Donaldson, the plaintiff. The other tract became the property of Mrs. Wendle. Crane, the defendant, was her tenant at the time this action was begun, residing upon the premises.

She lived in Jackson county. The action is trespass *quare clausum.* Plaintiff claims that the defendant, Crane, entered and destroyed certain corn which the plaintiff had planted upon the premises under the following circumstances: When the plaintiff entered under his deed, he found Mrs. Wendle occupying the adjoining premises up to a certain fence, which the defendant claims to have been established by the Blowers brothers as the line. The plaintiff testified that, after he took possession of the tract purchased from Ferguson, he leased the field south of this fence in the spring of 1895 from George Blowers, and that he asked George "what was the matter with his drawing the fence away, and plowing right through there, and dividing the ground as near as he could where the fence stood?" He was told that he (George) thought Mrs. Wendle would have no objection. Thereupon he drew the fence away, and planted the two adjoining parcels (his own, and that which he says he leased from George). He says that he divided the crop up to the line where the fence had stood.

A little while after his crop came off, the plaintiff caused the line to be surveyed, and claims that it was found to be some rods farther south than that occupied by the fence which he had removed. He testified that after the survey he had some talk with Mrs. Wendle, and that she compared deeds with him, and said in response to his question, "What are you willing to do about it?" that "she would never use that piece of land." She admitted that they talked, but denied that she made such statement, and said that she claimed that the fence was upon the line which had been established by agreement. It does not appear that Crane had anything to do with this talk, or that he was present, though at that time he was in possession of the farm. The plaintiff said that he did not know as he ever surrendered the parcel to her after cropping it, but it is obvious from his own testimony that he did nothing more with the parcel until he began plowing in 1896. At that time Crane had possession as tenant. He went there

to plow on May 1st, and was forbidden to do so. Thereupon he did no more until he went to Adrian, and consulted counsel. On his return he found that Crane had finished plowing the piece, and had sowed oats. He then went over it, and planted it to corn, and then Crane dug up the corn. He then brought this action before a justice of the peace, alleging title to the premises. The case was certified to the circuit, and the plaintiff recovered a verdict for five dollars damages. It is manifest that the case was brought with a view of settling the title, or, rather, fixing the line between the parcels, and much of the testimony offered was addressed to the question whether a line had been established by agreement.

The defendant claimed that in 1878 or 1879 the two brothers made measurements, and agreed upon a line which should be the boundary; that they turned a back furrow to mark it through the cleared land, and blazed trees through the woods; and that a fence was built upon the line of the dead furrow, and, though the fence had at times been shifted for convenience, the dead furrow had always been recognized by the occupants as the line, until the plaintiff questioned it. The plaintiff did not contradict the fact of the agreement, but he offered testimony which he claims tended to show that it was not an agreement settling the boundary, and the statement of Mrs. Wendle "that she would not use it any more," which he says was an abandonment of any such claim, and tends to prove plaintiff's possession. This action is not brought against Mrs. Wendle, and the defendant is not bound by her promises, if she made any. His possession could not be affected by such statement.

The important question is whether Crane abandoned the disputed portion and the plaintiff took possession. The evidence conclusively shows that, previous to the removal of the fence, Mrs. Wendle had quiet and undisturbed possession. The plaintiff occupied it under her afterwards as a cropper, and, after taking off his crop, he did nothing more with the disputed territory, except to

run a survey over it, until he undertook to get possession by plowing it on May 1st, and planting corn on Crane's oat field. In our opinion, the testimony conclusively shows that he had no actual possession, and that Crane had such possession, and, for aught that appears, has it yet. This is fatal to the plaintiff's case, and the court should have directed a verdict for the defendant. *Newcomb* v. *Love*, 112 Mich. 115.

This case appears to be an illustration of the folly of trying to obtain possession of land through an action for trespass. The law prescribes ejectment as the method, and, lest injustice should be done, provides a second trial as a matter of right. We do not feel called upon to discuss the other questions in the case, or to direct a new trial, as upon plaintiff's own testimony he should not recover.

The judgment is reversed, and no new trial ordered.

The other Justices concurred.